JESSE LESHAGGER, ET AL., *v.* H. L. BONTA, ET AL.

**Mistake of Acreage in Conveyance—Suit Against Grantors on Deficit of Land.**

> Where persons who are endorsers for another receive conveyance of land from him to indemnify them on account of such indorsement compromise with the creditor by conveying the land to him and making payments, besides for a full discharge from such debt, and after this has stood more than ten years it is discovered that there is a less number of acres than was thought to be in the conveyance, it is too late to correct the mistake in a court of equity, especially since the grantors received nothing for making the conveyance except the release of a part of them upon indorsements.

APPEAL FROM MERCER CIRCUIT COURT.

October 10, 1877.

OPINION BY JUDGE PRYOR:

It is conceded in argument that the warranty of title does not embrace within its terms any covenant that the tract of land contains the number of acres specified in the tract. In other words, the representation or statement as to the number of acres, if false or made by mistake, can be corrected alone upon the idea that the vendee has sustained a loss, and would not, with a knowledge of the quantity, have made the contract; that the mistake being so great as to the quantity (the appellant being without fault) a chancellor will grant the relief. The right to grant relief upon a proper state of case, where there is a deficit in the sale of land, cannot be questioned; but in the present case, without determining all the questions raised, it seems to us that the relief must be denied for the reason that, if granted, it places the entire loss upon the appellant, when the facts show the one party was as much in fault as the other, the mistake being mutual, and when the additional fact appeared that the appellants had received no other consideration for the conveyance than their release as indorsers. It was in fact no sale of the land by Simms, Peters and Leshagger to the savings institution, but a compromise by which Simms and Leshagger, who were indorsers for Gabbert on bids payable to the savings institution, and who had been secured by a conveyance of the land in their liability as such, surrendered the land by making a conveyance to the bank, and were released as indorsers.

The appellants, except Peters, were the indorsers, and as between themselves and Gabbert they were sureties on the paper. They held

this land to indemnify them, had never received one dollar of the money, and the bank agreed to take the land and release them from all liability, and take Gabbert's individual note for the balance. Peters was not even an indorser on the bill, but at the instance of Leshagger, Peters having been invested with title to part of the land, made a conveyance directly to the saving institution. Simms was liable for only one of the debts, Peters not liable at all, and Leshagger liable for the entire amount. Leshagger paid Simms $600 to go into the compromise, or a part of it, and obtained the conveyance from Peters. This was all done to pay the bank debt, from which these present appellants had received no benefit whatever. Holding the same to indemnify them, the bank agreed to take it and release them. The proof conduces to show that Gabbert was at that time solvent, and the facts indicate that if the bank had known the real quantity of the land in the tract it would have presented no obstacle to the compromise.

The conveyance made by these parties shows that it was no sale of the land, but a compromise made by the bank to secure its debt. In this compromise Gabbert covenants with the bank as well as Leshagger and Simms, and also with Peters, all for the purpose of effecting a settlement. This compromise was made and the conveyance executed in the year 1866, and ten years after, the appellees, creditors of the savings institution, undertake to prosecute an action upon a return of no property found, in which a mutual mistake is alleged and the right of recovery by the bank garnisheed as a chose in action to satisfy their debt.

It is not necessary to determine whether or not such a cause or right of action is the subject of garnishment, as we are well satisfied that no relief can be granted in favor of the party who derives all the benefits of the compromise against those who derive none, although the mistake was mutual. The parties who have received nothing are made to account for a mutual mistake to the party who has recovered all. These indorsers may have secured themselves in their liability, and doubtless would have refused to have done more than convey the land if the real number of acres had been known. Their rights must be protected, as well as those of the creditors, and when they have been released as indorsers by compromise entered into more than ten years prior to the institution of the action to correct the mistake, it is too late for the chancellor to grant the relief, even if the statute was not interposed or the discovery of the mistake made until the bringing of the action. The creditor sleeps too

long upon his rights, is too late in discovering his mistake. The party released during such a length of time could have secured himself doubtless in many ways, and such a want of diligence must avail as against any demand for relief in a court of equity.

The judgment against Simms, Leshagger and Peters is *reversed* and cause remanded with directions to dismiss the appellees' petition.

*T. C. Bell, P. B. Thompson, for appellants.*
*Thompson & Thompson, for appellees.*